## Fannin's Adm'r v. Segraves et al.

December 3, 1946.

Rehearing denied Feb. 11, 1947.

698

Martin & Smith for appellant.

Dysard & Dysard for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

The principal question involved on this appeal is the construction of the will of Mrs. Nona B. Fannin, who died in Ashland in 1942. Aside from the payment of debts, the will provided:

"Item II. I will to my brother, Martin T. Newman of Los Angeles, California, my savings account in the Security First National Bank of Los Angeles, California, and my home and lot in Los Angeles, California, known as 335 — E. Ave 43, size of lot is 45x110 including 15 ft. of corner lot adjoining Homer St. & Ave. 43.

"Item III. I will to my grand nephew Thos. Sherill Newman Biggs III born Jan. 13—1929, two thousand dollars, one thousand to be given to him at the age of sixteen and one thousand at the age of twenty years.

"Item IV. I will to each of the following relatives, two hundred dollars each, Lota M. Fannin, Thos. Sherill

Newman Biggs, Nona Ben Fannin and Isalander Newman Hold.

"Item V. I will and devise to my husband, William Anderson Fannin, my remaining real estate in Los Angeles, California, and the contents of my safety deposit box in the Second National Bank at Ashland, Kentucky, without restrictions, except any deeds to property hereafter mentioned. And I will and devise to my husband William Anderson Fannin all the remainder of my property, both real and personal, the store room known as 218 — 15th Street, Ashland, Kentucky, and my savings account in the Second National Bank, Ashland, Kentucky, to be held in trust for him, giving him the income from both unless he gets married then the store room at 218 — 15th Street is to be held for Thos. Sherill Newman III until he is twenty-one years of age then he is to have full possession of same—The savings account mentioned in this paragraph is to be equally divided between Martin T. Newman and W. A. Fannin, and Newnu-.

"Witness: Marie Bryson.

"(Signed) Nona B. Fannin."

Mr. William A. Fannin, husband of the testatrix, was appointed administrator of his wife's estate and continued to act as such until his death in August, 1944. His attorney had prepared a final report for him, but it was never filed. However, it was filed with the special commissioner who heard the evidence in this case. After Mr. Fannin's death, the appellant, T. S. Biggs, was appointed administrator de bonis non with the will annexed of the estate of Mrs. Fannin. The Second National Bank qualified as Mr. Fannin's administrator. The administrator of Mrs. Fannin's estate filed this action seeking a construction of her will and settlement of her estate.

The appellant takes the position that under the fifth provision of Mrs. Fannin's will, her husband was given only the income from the storeroom at 218 — 15th Street and the savings account in the Second National Bank at Ashland, which amounted to $10,500 at the time of Mrs. Fannin's death, subject to be defeated by his remarriage, and that Mrs. Fannin did not dispose of the corpus of these two items of property. On the other hand the

appellees contend that Mr. Fannin was given a defeasible fee in these two items of property subject to be defeated by his remarriage. The special commissioner found in favor of the appellees and his recommendations in this and other respects were affirmed by the chancellor. We believe that ruling was correct.

The reasons for finding as he did are very plausibly set forth in the following paragraphs of the special commissioner's report:

"There is no proof in the record as to the value of the real estate which she bequeathed, to her husband in Los Angeles, California, but she manifests an intention in the very beginning of that paragraph of taking care of Will in a rather substantial way. She later made some changes about the contents of her safety deposit box in the Second National Bank in Ashland, Kentucky, which I have already treated of in this report. Then there follows this significant language: 'And I will and devise to my husband, William Anderson Fannin, all the remainder of my property, both real and personal.' Had she stopped there at that point, there would be no question but what she thereby bequeathed to her husband all of the residuary portion of her estate. She used mighty strong language down to that point. It is: 'All the remainder of my property, both real and personal.' But then there comes in this clause, after using a comma: 'the storeroom known as 218 — 15th Street in Ashland, Kentucky, and my savings account in the Second National Bank in Ashland, Kentucky, to be held in trust for him, giving him the income from both unless he gets married, then the storeroom at 218 — 15th Street is to be held for Thomas Sherill III until he is 21 years of age, then he is to have full possession of same * * *'

"Now, the question is sharply presented as to whether Will took only the income from the store building and savings account during his life and while he remained unmarried, or whether he took a defeasible fee. In approaching the solution to this question, we might propound another question. Upon what contingency, if there was one, could Thomas Sherill Newman III take these two properties: In answer to this question the will says in plain language: 'unless he gets married then the

storeroom at 218 — 15th Street is to go to Thomas Sherrill Newman III, etc.'

"As I construe the language of this item of the will, the right of Thomas Sherill Newman III to take these properties is not absolute. It was contingent. That contingency was the remarriage of Will. If he did remarry then (the testatrix used the word then), and only then, did Thomas Sherill Newman III become the owner of said property. Of course the possibility of his remarriage could not have been determined until his death, and it might be argued that it would be unnatural to conclude that the testatrix intended that his interest would ripen into an absolute title only at the time of his death, at which time it would pass under the law of descent and distribution to his brothers and sister. Yet, that is the way all other property given to him under the will went. Can there be any question but what the home on 16th Street and Lexington Avenue, the Prospect property and the Buckingham lots and other property not otherwise disposed of under the will went to Will in fee simple? I think not. Then why should the testatrix make a distinction as to these two properties: If Will remained unmarried there is just as much reason to believe that she wanted him to have absolute title to these properties as any other. After much study it is my conclusion that the testatrix intended to penalize Will, if he remarried, by taking away all interest she had given him in the storeroom property and giving it to her grandnephew and by dividing the savings account between her brother, her grandnephew and Will, but on the other hand, if he did not remarry, she intended to reward him and his estate for remaining single.

"It is my opinion that the trust created in favor of Will was one on condition, subject to be terminated by his remarriage. If he did not remarry the trust continued until his death when the absolute title passed to his brothers and sisters as his lawful heirs. During his lifetime he was possessed of a defeasible fee."

A yellow envelope was found in Mrs. Fannin's lockbox which contained this notation:

"The contents of this package is to be given to my grandnephews Newnu and Cappie Newman at my death

in trust with their mother Isabelle Newman until they are 18 years of age.

"Signed Nona B. Fannin"

The envelope contained $960 in currency and $30 in gold. Mr. Fannin as administrator took charge of that money. The special commissioner found, and we think correctly so, that a clear intent was shown on the part of Mrs. Fannin to give this money to the parties named, and that since Mr. Fannin took charge of it as her administrator it is a charge against her estate and should be paid first therefrom before the residuary legatees begin to share therein. The special commissioner took the same view as to all the special bequests in the will and held them to be prior claims against Mrs. Fannin's estate. This also was proper.

There remains the question of whether Mr. Fannin remarried, as is contended by the appellant. There is evidence showing that Nellie Powell of Carter County moved into Mr. Fannin's home shortly after Mrs. Fannin's death, and that they held themselves out as man and wife. However, there was no showing whatever of a ceremonial marriage, and, as a common-law marriage is not recognized in this state, the special commissioner found that Mr. Fannin never remarried, and, as he says, for good reason, because had he done so he would have lost the income from the two items of property heretofore specified, as well as the property itself. We think, as did the special commissioner, that it is significant that Nellie Powell, although summoned as a defendant in the case, failed to answer, and though numerous attempts were made to coerce her appearance as a witness she could not be located. If she had actually been married to Mr. Fannin, her appearance would have cleared her name of any suspicion arising from her living with Mr. Fannin and she would have had a considerable dower interest in his estate. We agree with the conclusion that it was not shown that Mr. Fannin remarried. Therefore, we affirm the judgment in all respects.